McLean
vs.
Nixon.

---

Case 41.

18bm768;
110 832

18bm 768
125 530

Pet. Eq.

## McLean *vs.* Nixon.

APPEAL FROM KENTON CIRCUIT.

1. A mandate from the court of appeals to an inferior court is imperative on the court below; it has not the option to obey or disobey it; this court itself has no power to revoke it after the expiration of the term at which it was pronounced. It must be carried into effect by the inferior court according to its true intent and meaning. (*Brown vs Crow's heirs, Hardin*, 437; *Kennedy, &c. vs. Meridith*, 4 *Monroe*, 411.)

2. Judgments of the circuit court may, for any of the causes enumerated in *sec.* 579 *of the Code of Practice,* be vacated even after an

affirmance in the court of appeals, upon a petition to the circuit court, for such errors as could not be noticed by this court, if commenced within the time prescribed by the Code. (*See Rouse vs. Williams, MSS. opinion, winter term*, 1857-8.) A bill of review is not barred by an affirmance in this court, but can be maintained only upon newly discovered facts, or the recent discovery of written testimony of a permanent and unerring character. (*Singleton vs. Singleton*, 8 B. Monroe, 67; *Bush vs. Madiera's heirs*, 14 *Ib.* 213.)

3. Regularly a bill of review should not be filed until the mandate of the court of appeals is carried into effect, yet cases may occur in which it will not be required.

[The facts of the case are stated in the opinion of the court. REP.]

*Stevenson & Myers*, for appellant—

This case having been before this court and decided on the 13th March, 1856, Nixon, the appellee produced the mandate of this court, and filed it, and it was entered of record. McLean, the appellant, produced an affidavit, and that of J. P. Jack and B. M. Bush, and moved the court to continue the cause, and give him an opportunity to take further proof in the case. The motion was overruled, and final judgment entered in favor of Nixon, according to the mandate of the court of appeals.

The only question now for decision is, whether or not the circuit court erred in overruling McLean's motion.

1. After a cause has been submitted, and before it is decided, has a court the power, upon the discovery of new testimony which could not, with reasonable diligence, have been discovered before, to set aside the submission to give the party an opportunity to procure such testimany?

2 Did the affidavits filed show the discovery of such evidence?

It is admitted, as a general rule, that it is the duty of an inferior court to carry into effect the mandates of the court of appeals, but it is not admitted that it applies to a case like this, when important testimony has been discovered. It has been the rule with courts of equity, although a cause had passed the-

BEN. MONROE'S REPORTS.

stage of preparation, and publication had passed, or the cause set down for hearing, or even if judgment has been rendered, to give the party an opportunity to avail himself of the benefit of newly discovered testimony having an important bearing upon the rights involved.

By the Code of Practice, a party may have a new trial even after judgment, for "newly discovered evidence material to the party applying, which he could not, with reasonable diligence, have discovered and produced at the trial." (*Civil Code, sec.* 369.) We can see no difference in the principle of the case contemplated by the Code and the case now under consideration. It should not only be the rule, but the duty, of the party who has discovered testimony, to seek the first opportunity of producing it, although the case be under submission; and a neglect in doing so would furnish a ground for refusing a new trial after judgment.

That such has always been the rule, upon the discovery of material evidence, after publication, or after the cause has been set down for hearing, we refer to 2 *Daniel's Chy. Prac. page* 569, 797-8.

We regard this case as precisely analogous to the case of a cause submitted but not decided, and an application to introduce newly discovered evidence, and that the court should have allowed the proof to be taken.

2. The affidavits, as we think, showed good reason why the proof was not taken before as well as its materiality in the case.

*James Harlan*, on the same side—

The question presented by the record in this case is, whether the facts presented by the affidavits filed by McLean, and the reason given for not producing the evidence proposed to be taken when the case was first submitted to the court, are or are not sufficient to authorize the court to open the judgment and let in the proof? It is a settled question in this

state, under the old system of pleading in equity, that a bill of review may be sustained after a final decision by this court. The case of *Singleton's Will*, which was decided and reported in 8 *Dana*, affirming the decree of the circuit court annulling it, was afterwards reviewed, (8 *B. Monroe*, 367,) the original decree reversed, and the will finally established.

The bill of review was abolished by the Code of Practice, and other proceedings substituted in its place. *Section* 579 prescribes the manner in which a judgment or final order may be modified or vacated after the expiration of the term, and sets out eight distinct grounds in sub-sections. The *4th sub-section* is " For fraud practised by the successful party in the obtaining of the judgment or order." Now, if the affidavit or petition, whichever it may be styled, of McLean, supported as it is by Jack and Bush, is true—and for the time being it should be so regarded—the judgment obtained by Nixon was obtained by fraud and perjury—fraud in changing the books of Jack & Co., containing the account of McLean, and perjury in proving a state of fact which had no existence, to-wit: that McLean purchased the "Diana" for the firm of Jack & Co. Mr. Jack knew better than any other person the facts of that transaction. The statements of Augustus Haven are not to be taken into the account, because it is a settled question, both by the circuit court and by this court, that Haven being a party to the record, and directly interested in having the land claimed by McLean sold to pay a debt for which Haven was personally liable, was an incompetent witness.

No exception can be taken to the evidence of Jack, because he would be swearing *against* his interest. There being a personal judgment against him and Haven to be satisfied by the sale of the land claimed by McLean, he is directly interested against McLean, and therefore his evidence is entitled to more weight than if he were a stranger to the case.

Then the question recurs, whether McLean made a *prima facie* case to the circuit court? If he is not entitled to relief in the mode suggested, then he is to be deprived of his property contrary to every principle of justice and right.

*Benton & Nixon and Moore & Kinkead*, for appellee—

This suit was originally brought in the circuit court by Nixon, the appellee, against James P. Jack & Co., and McLean, the appellant, to recover judgment upon a note of $3,019 53, and to attach the equitable interest of Jack & Co., in a tract of land in Lewis county, the legal title of which was in the appellant. The circuit court dismissed the petition, and the present appellee appealed to this court. The decision of this court upon that appeal, reversing the judgment of the circuit court, and remanding the cause for judgment for plaintiff, is reported in 16 *B. Monroe*, 174 *to* 183, to which we now refer, as well, for a statement of facts, as for the law of the case.

At the March term, 1856, of the circuit court, the present appellee filed the mandate of this court, and judgment was rendered in conformity therewith. To the rendition of that judgment, the appellant objected, and filed affidavits of himself, B. M. Bush, and J. P. Jack. In his own affidavit he professes to have been unable to obtain the testimony of Jack. in time for the trial of the case. Jack swears his firm had no interest in the Lewis county land—Bush, that he sold and conveyed the land to McLean, and knows nothing beyond that of the ownership.

The case was originally submitted by McLean, and no application was made by him for time, until the filing of the mandate of this court.

With respect both to the matter and manner of Jack's statement, we are fully satisfied there is nothing in it to have entitled it to any controlling influence in the decision of the cause, even had it been in testimony in the case.

But irrespective of the merits of the affidavits, the only question, both upon reason and authority, that can be made upon the record now before the court, is, whether the judgment of the circuit court, fairly carried into effect the opinion of this court, according to its true intent and meaning.

The practice of this court, for the last fifty years, has been in strict conformity with this principle.

In the case of *Brown vs. Crow's heirs, Hardin*, 437-8, it was held that, " on reversing the decree of an ' inferior court, the decree pronounced by the court of ' appeals and remanded to the inferior court to be ' carried into effect. cannot afterwards be inquired ' into by the court of appeals or inferior court. If ' appeal be taken from the proceedings therein, it ' only remains to be considered, whether the decree ' of the court of appeals has been carried into effect ' according to its true intent and meaning." And the reason of the rule is thus cogently enforced by *Edwards. Ch. J.*: "A contrary. construction of the law ' would involve the absurdity of an appeal from the ' decree of the appellate tribunal, to itself; and the still ' greater absurdity of the reversal of the proceeding ' of the inferior tribunal, because it had obeyed the ' mandate of this court."

Precisely the same principle is decided in *Kennedy, &c. vs. Meredith, 4 Monroe*, 411. Says Judge Mills : " Before reversing a decree in this court, such decree ' must be given, or be directed to be given, as the ' court below ought to have rendered in the first in-' stance. The directions thus given by this court, are ' not in the power of the court to revoke, after the ' term of the court has ended. Far less are they in ' the power of the inferior court; which has not the ' option to obey or disobey."

See also *Nelson's heirs vs. Clay's heirs, 7 J. J. Marshall*, 138, in which the same doctrine is clearly recognized and enforced. And in *Daniel vs. Ballard,* 2 *Dana,* 296, it was held that' this court upon reversing a decree for want of evidence to sustain it, will not

McLEAN
vs.
NIXON.

open the decree for further preparation and proof; but will remand the cause for such decree as the proof will justify. See also *Whittemore vs. Stone's adm'r.*, 7 *Dana*, 237–8.

The objection herein, was to the rendition of any judgment, on the filing of the mandate, and we are not advised that there has been any pretence that the judgment of the circuit court was not in conformity with the decision of this court. An affirmance is asked.

Jan. 26, 1858.. Judge SIMPSON delivered the opinion of the court.

Upon a previous appeal in this case the judgment was reversed, and cause remanded with directions to enter a judgment subjecting to sate three undivided fourths of the tract of land in the pleadings mentioned, to satisfy and pay the plaintiff's demand.

When the mandate was entered in the circuit court, the defendant moved for a continuance, upon affidavits filed, in order that he might have time to procure additional testimony, which he alleged he had discovered since the former trial. The court overruled his application for a continuance, and entered a judgment in pursuance of the mandate of this court, and from that decision of the court he has appealed.

**1. A mandate from the court of appeals to an inferior court is imperative on the court below; it has not the option to obey or disobey it; this court itself has no power to revoke it after the expiration of the term at which it was pronounced. It must be carried into effect by the inferior co't according to its true intent and**

The mandate of this court is imperative on the court below. It has not the option to obey or disobey it. This court itself has no power to revoke it after the expiration of the term at which it was pronounced. It must be carried into effect by the inferior court according to its true intent and meaning. This doctrine was fully established in the cases of *Brown vs. Crow's heirs, Hardin Rep.* 437, and of *Kennedy, &c. vs. Meredith*, 4 *Monroe*, 411. In the case first mentioned it was said by the court, that " a contrary construction ' of the law would involve the absurdity of an appeal ' from the decree of the appellate tribunal to itself, ' and the still greater absurdity of the reversal of the ' proceeding of the inferior tribunal, because it had ' obeyed the mandate of this court."

The judgment of the circuit court when rendered in pursuance of the mandate of this court, stands in that court, upon the same footing with other final judgments over which the court has no control after the expiration of the term at which they were rendered, unless it be to vacate, or modify them for the causes and in the mode pointed out in sections 579 and 581 of the Code of Practice.

A bill of review was not, under the former practice, barred by an affirmance in this court, nor was a party precluded from filing it on the ground that the decree in the court below had been rendered in conformity with the mandate of this court. But in such cases no error could be relied upon that might have been presented to, and decided by this court. A bill of review might however be maintained upon newly discovered facts, or the recent discovery of written testimony of a permanent and unerring character. (*Singleton vs. Singleton*, 8 *B. Monroe*, 367; *Bush vs. Madeira's heirs*, 14 *B. Monroe*, 213.)

Under the Code of Practice a judgment which has been affirmed by this court, or which has been entered in pursuance of its mandate, may no doubt be vacated by a petition in the circuit court, but it can only be done for some of the causes enumerated in *579th section of the Code*, and for such errors as could not be noticed by this court; and the proceedings instituted for such a purpose must be commenced within the time prescribed by the provisions of the Code.

It was decided at the present term, in the case of *Rouse vs. Williams*, (*manuscript opinion*.) that such a petition might be filed; and although regularly it should not be filed until the mandate of this court was carred into effect, yet if it were filed before, and presented a sufficient cause for vacating or modifying the judgment of the circuit court after the expiration of the term, if one had been rendered, it might be sustained; yet if it failed to present such a cause, and only presented matters that might have been introduced into the cause, and relied upon be-

McLEAN
*vs.*
NIXON.

meaning. *Brown vs. Crow's heirs, Hardin,* 447; *Kennedy vs Meridith,* 4 *Monroe,* 411.

2. Judgments of the circuit court may, for any of the causes enumerated in *sec.* 579 *of the Code of Practice,* be vacated even after an affirmance in the court of appeals, upon a petition to the circuit court, for such errors as could not be noticed by this court, if commenced within the time prescribed by the Code. See *Rouse vs. Williams, MSS. opinion of Winter Term,* 1857-8. A bill of review is not barred by an affirmance in this court, but can be maintained only upon newly discover'd facts, or the recent discovery of written testimony of a permanent and unerring character. *Singleton vs Singleton,* 8 *B Mon.* 367; *Bush v. Madeira's heirs,* 14 *Ib.* 213.

3. Regularly a bill of review should not be filed until the mandate of the court of appeals is carried into effect, yet cases

may occur in which it will not be required.

fore it was originally tried in the circuit court, it could not be maintained, but should be disregarded, and the mandate of this court be executed.

Applying these principles to the present case, it is obvious that the court properly overruled the defendant's motion for a continuance. And even if he had presented the same matters upon which his motion was based, in regular form by a petition to vacate the judgment, which was the only proper mode to proceed to effect the object he had in view, still he would not have made out such a case as is embraced by any of the provisions of the Code of Practice which are applicable to the subject.

Wherefore, the judgment is affirmed.